At this time we'll hear Morrison v. The Buffalo Board of Education. Thank you. Thank you. We can wait until the hubbub behind has died down. It seems like you're losing your audience. I don't think this case is as exciting as it sounds. Well, they're all exciting. Okay, I think we can start. Good morning, Mr. Cott. May it please the court. This case is very simple. This is a case of a loyal and faithful educator who was contracted by the Buffalo Board of Education to perform a service, a two-year service, in what was considered a failing school district. She has a great background. She has great experience in working in urban districts that have great difficulties. She was specifically hired for that purpose. She was hired initially without any New York State certification. She fully disclosed that to the superintendent, to the board, to everyone who reviewed her contract. Her contract was eventually ratified by the board. Along the way, the superintendent and the assistant, Mr. Brown, the director of talent management, advised her to obtain certification. She did. She obtained two separate certifications. The certifications she obtained were exactly what they directed her to obtain. They fired the board at some point after that. Within a week or so of her last certification, voted 8-0 to terminate her. This is a case that involves fairness. There was a disparate legal bargaining power, if you will. When you say fairness, you're avoiding the word contract. Well, yes, but the contract itself was negotiated from the standpoint of the board having multiple in-house legal counsels and a retained law firm. My client came in from out of state, not being familiar with New York State certification, the process, and relied upon them to guide her for obtaining the proper certification. And the contract required her to- No, the contract is not specific. The job posting required. But the contract is silent. That was never incorporated by reference. There's nothing incorporating. And, of course, we're not here to prove the case today. We're simply here to make a plausible argument. It doesn't require her to maintain any certifications required of her position. That is qualifications required by the Department of Civil Service or the State Education Department. That is correct, Your Honor. So now the question seems to be, what certificates are required by the Department of Civil Service or the State Education Department? Exactly. Okay. And that we don't know because the job posting is created in-house by the board, and, in effect, the only decision that I found doing my research was this opinion from the State Education Commissioner who found the internship certificate to be equivalent to the regular, full-fledged, whatever you want to call it, certification. When you're talking about the SDL internship documentation, who did she procure that from? She procured it from the State Education Department. All right. So your argument, I assume at least in challenging dismissal, is that since it's the Education Department that gave her that certificate, regardless of what is said now, at least about her eligibility for it, that she complied with the contract. Is that your position? Yes, absolutely, Your Honor. Okay. Now, discovery might elicit all kinds of other facts, but right now you're saying this shouldn't have been dismissed. Absolutely. As a matter of fact, Your Honor, the injustice here is really, if we look to the decision in the appendix, pages 199 and page 201, we're looking at some very specific cases. The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement. And I turn to page A201. Under New York law, the question of ambiguity must be determined from the face of the agreement without reference to extrinsic evidence. If we're looking at the job posting, it's extrinsic evidence. That's basically our position. And I know we also have the negligent termination, which I believe is the basis of giving bad legal advice. Essentially, Mr. Brown, the talent management director, took it upon himself to guide her as to what the proper certification is for the job. The complaint itself says, paragraph 25, that a copy of her application for employment demonstrates that at time of interview and hiring, she truthfully declared her lack of a valid New York State Education Department certification for the positions applied and interviewed for. So it would seem that the real question is not whether she had the certification she was required to have, but whether they hired her anyway, who knows why, and waived. That's what they did, Your Honor. And in fact, it's the course of conduct. But there's a no waiver provision in the contract. Yes, but that may be true. But the case law shows that if conduct of the parties deviates from that, they can't rely upon the non-waiver clause if their actions treated the contract as valid, which they did. They paid her for almost six months. They obviously guided her to get the certification, and at some point, the board voted to ratify her contract. Qualification that's required by law? We don't know. We don't know. Your Honor, we don't know. The waiver might also only be a waiver of the no waiver provision to the extent necessary to afford her time to secure whatever certifications were required. Isn't that also a plausible understanding of what we're hearing? That is a plausible understanding. But the real injustice, if you want to look at this whole big picture, she did exactly what they told her to do, twice. And then they fired her. And the only law out there that I could find shows this internship certificate is valid for whatever job she was hired to perform. But that's disputed. It's disputed, Your Honor. Exactly. But the idea here is we need to make a plausible argument to remain in front of the district court. And we believe we've made multiple plausible arguments or multiple grounds within that breach of contract alone, within that prong of the complaint. Well, you've reserved rebuttal? Yes, I have, Your Honor. We'll hear you then, sir. Okay. Thank you. Mr. Moore. Morning. Morning. May it please the court, Joel Moore from the Buffalo Public Schools District, arguing on behalf of Appelli, Buffalo Public School District, and various- What certificates are required by the Department of Civil Service or the Education Department? Your Honor, I reference 881, which is the job posting. I should say that it reflects- That's what the posting required, but that's not what the actual agreement requires. And I'm a little concerned here as to whether we know on this record what it is that the Department of Civil Service or the State Education Department required. Your Honor, well, as I understand it, the way the process works is that we have a human resources department, and all of our hirees actually have to go through the city of Buffalo Civil Service Department. They dictate the job specs, the job duties. This is a breach of contract action from a woman who did get some certificates. She got the SDL internship. She got a conditional school building leader certificate. How do we know that those aren't satisfactory under the requirements of the Department of Education or the Department of Civil Service? How do we know that on this record? Your Honor, respectfully, I submit to you that it isn't so much a question as to whether they are satisfactory. It's a question as to what she bargained for under the contract. I'm reading the contract, paragraph 13. I didn't see anything else that allows you to require her to maintain any other certificates. Well, the specific certificates are mentioned in the job posting, and if you'll look— How do we know that that's what the Department of Civil Service or the State Education Department require, which is all the contract says she has to do? Your Honor, as I said, I lean on my initial statement, which is that would be reflected in civil service's job posting requirements. They would specify the two requisite certificates in this case. I guess what I'm asking is, it's possible that the job requirements you imposed are different from what these two state departments require, and since you didn't incorporate your job notice into her contract, if you're firing her for not having those particular documents, it's a question whether that is permissible under the contract, especially when the allegations are that you didn't keep telling her to get the two certificates identified in the posting. According to the pleadings, you told her to get the SDL internship. Now, I understand this may all be disputed, but that's the pleading, that that's what you told her to get in the end, and the State Department of Education gave it to her. Whether they should have or not is another matter. Your Honor, she was instructed to get the internship certificate, but she was not instructed to get it in place of the requisite certificates, and I'll mention— What would it have been for then? There's additional training that may have been useful for her. In particular, she came from out of state, so I believe she was from Florida, and her training there would not necessarily be consistent with those of the training that's required in New York, and as a result, there would have been— Which way does that cut? She comes from Florida, so she can have no idea under the sun what the requirements are of the New York State Department of Education? I agree with you, Your Honor, but I think that's why it was listed in the job posting, and I would suggest to the court or submit to the court that the contract actually does encompass the job posting, and specifically, if you look at Exhibit B of the contract, which specifically says, Attachment B to Agreement of Employment, Job Duties and Job Description. That's on A84, and so it pushes you to the job duties and job description, and that's the posting that you'll find on, I believe— Well, if it's so obvious, then why did the school district sign the contract if it's so obvious that she was not qualified? Your Honor, I think— She said she didn't lie. She said she had what she had, and she may not have known what the equivalence is between qualifications that she had in Florida and qualifications that would be required in New York. Your Honor, I think some of the things that were said by opposing counsel are true. We were presented with a candidate we thought had the core abilities to perform, although she needed additional training, and that's why we implement our no-waiver clause. In essence, what a no-waiver clause is is a clause that ultimately says, if a party does not act consistent with the contract for a period of time, we reserve the right then to insert ourselves and exercise, in this case, the opportunity to cut ties with that party. But having recognized that she did bring some great qualities to the table, we wanted to give her an opportunity to meet that. And so, in essence, once again, we built that into our contract. Was she ever told that she needed to get the thing that she needed to have? Well, Your Honor, we believe that we told her that by the job posting that was part and parcel of the employment agreement. But then you hire her without it. I mean, the job posting says you have to have it. She doesn't have it. You know she doesn't have it. You hire her anyway, and you give her a contract that says get whatever requirements are demanded by two state departments. And in addition, Your Honor, she's there for over eight months, so she has opportunity to seek those out. Absolutely. But it's still not clear what requirements those two boards have. I mean, you didn't ask for judicial notice of any state documents that say you have to have these requirements. I mean, we just don't have anything in the record on that. Your Honor, there is nothing in the record that specifically speaks toward what the state requirements are on civil service. And I argue with you— Whether dismissal was appropriate. You may very well produce all of this material if the case goes forward, but was dismissal appropriate? Your Honor, I think it is. And I think I point specifically to plausibility on its face, right? We're talking about a breach of contract and also a negligent termination claim. I'll focus, based on limited time, on the breach of contract portion. The whole purpose of us writing contracts is to memorialize the agreement. And when we talk about intelligent parties operating, this notion that you had this large legal team, which I assure you, I wish we had a large legal team that could entertain all this stuff. I assure you we do not. But we also were dealing with a doctor on the other side who was completely capable of understanding the intricacies of these things, having been highly educated herself. So we come in, we agree to specific terms, we include no waiver contracts, we include no oral modification of the contract, we include all of these things, and we assume, per the contract, per two educated individuals who have come together and agreed upon these terms, that we go forward. Now, to come back and say that we're going to operate outside of these terms, even if there was another certification that was an equivalent, and you see that there are some things in the record where people suggest maybe it was an equivalent, I submit to you once again that it's not a question of whether there was an equivalent, it's a question of what we bargained for. We bargained for two specific certifications. She lacked both of those. She was given time, or at least had ample time, eight months out of a two-year contract to seek out and secure that. Once the district inserts itself and says, you know what, we've reached a point where you haven't gotten to that, per our bargained agreement, and we're going to cut ties as a result, contractually I believe we have a right to proceed like that. That's the whole point of a contract. Would you walk me through, just very quickly please, Mr. Moore, what it is, where it is in the contract that the school says or the school board says this was required? So, Your Honor, looking at Are you using attachment B to bring in Yes, I'm using attachment B, which is referenced on appendix 84, and that pushes me back to the job posting, which is on A65. So if we Does attachment B tell you that it refers to the job posting? I believe attachment B It's just one sheet, right? It's just one sheet, and it says job duties and job descriptions. Why does that necessarily mean the posting?  Yeah, but not as far as I'm concerned. When I look at this, I'd say how do I know that that's the job posting? I mean, the job posting wasn't clipped to this, right? No, it wasn't. It was just this one sheet that was intended by the drafter, somewhat ambiguously perhaps, to refer to the job posting. And there was no suggestion, at least in the record as I understand it, that there was an ambiguity with respect to this. This was included as an attachment to the amended complaint, and it is arguably incorporated thereby. But as I said, there's nothing in the complaint that says, oh, there's an ambiguity. We don't know what attachment B, the agreement on employment, or the job duties and job descriptions that are referenced, what it's referencing. Well, it's not clear that what it references is the certificates required in Paragraph 13. Because you didn't write Paragraph 13 to say that if you fail to maintain a certificate of A or B, the two certificates mentioned in the job posting, then the agreement shall immediately become null and void. What you say in Paragraph 13 is that she has to maintain any certificates required by the Department of Civil Service or the State Education Department, which may include the ones in the job posting. There may be alternative ones. As I said, we just don't know because nothing is in the record as to what these two departments require. And as I said, Your Honor, I think we have to be careful not to read the contract in totality just based on 13. I think we have to read the contract in totality of everything that's in the contract. And everything in the contract includes not only the clauses that we talked about, such as a no waiver, but it also includes the Exhibit B. Which doesn't even reference the job posting. It just says job duties, job description, and on its face does not say where to look for those. And, Your Honor, as I said, I submit to you that there was no contention what it was referencing. There's nothing in the entire amended complaint that will say to you, we did not know what they were referencing in the contract when they said job duties, job description. In fact, everyone knew we were talking about the details that were laid out, the qualifications that were laid out in the job posting. And when you look at those, when you reference those, it references the two specific certifications that are in question. I feel with the fact that you let her start working knowing she didn't have these certificates and you did it pursuant to a contract that says it immediately becomes null and void. Obviously, you were prepared to give her some time to obtain whatever certificates. That doesn't seem to comport with the contract. And I think, well, respectfully, Your Honor, I think that there is a recognition, as I said, opposing counsels alluded to it, that this was an impressive candidate, which is why we brought her in. We include a no-waiver clause, but we also, because we can give an individual time to rectify a potential shortcoming, in this case not having those certifications. But at some point, we do. How do you do that on a contract that's got a no-waiver provision? I mean, I ask counsel, should we understand the facts and circumstances here to be a waiver of the no-waiver provision to the extent you were going to afford her reasonable time to get certificates? No, Your Honor, and I think the three clauses that you have to look at in totality, as it references that, you have the functionality of the no-waiver clause, you have the no oral modification clause, and there's nothing in the amended complaint that suggests that we made some oral modification that allowed or nullified the certificates that were going to be necessary. And then we have a termination of agreement by operation clause that says failure to maintain a certification ultimately will make the contract null and void. Ultimately, immediately, which I would think means she had no contract from day one, but that doesn't make sense, so I'm trying to figure out what you were doing here with respect to certificate. And I understand where you're coming from, and I think, as I said, if you just look at the termination of agreement by operation of a law clause, without considering the no-waiver clause, one could possibly come to that agreement. But when you look at those two in tandem, I think you come to the conclusion the district has included some flexibility in allowing an individual to rectify a potential shortcoming in their job qualifications and the ability to exercise that termination at some subsequent time if that is not fixed. In this case, we have a situation where you have a two-year contract. We're eight months into a two-year contract, which is a significant amount of time, and you have the district saying, all right, we've reached the point where those qualifications, those shortcomings, if you will, should have been rectified. They have not been rectified. As a result, we're exercising our contractual right to terminate you. And if you note, the board mentions when they discuss the termination and vote, they say this has nothing at all to do with Dr. Morrison's conduct or her operation up to that point. It simply has to do with the fact that she has failed to rectify these certifications. Thank you. We'll hear from the rebuttal. Thank you very much, Your Honor. Your Honor, there are only a few things, I believe, that need to be rebutted here. I believe the court has understood this case very well, given the intricacies of it. Maybe I don't. Because your adversary makes the argument that a no-waiver clause doesn't mean that no leeway shall be afforded. What it means is that it's the board's way of reserving the right to tolerate a breach of the contract for a time, And it did for eight months. And then it exercised the right under the contract to declare it null and void. That would be a plausible argument if A-84, the attachment B, job description requirements had been completed. However, that was not completed. So we still are back to square one as to what- When you say completed, what do you mean? It's blank. I mean, it's totally blank. So there's never- There's nothing further than beyond what we've- Right. All right. Right. And I'll make the argument even go a little further. Even if that had been completed to the effect that it said internships or a school district leader's certificate, and she obtained the internship certificate at the direction of a member of the leader of the school board, Mr. Brown, she had followed their direction and had complied to the letter. And in this case, she did comply to the letter. I know it doesn't specify internship certificate. It doesn't specify anything. Internship certificate doesn't sound much like a master's degree to me anyway. Well, it's for a school district leadership position, Your Honor. So in effect, it would be for any position under a superintendent is what we believe. Any position, anyone who works under a superintendent, who assists a superintendent, who develops curriculum would be capable of using that internship certificate. Once the state education department, by looking at the person's experience, education, background, determines that they're fit to have an internship certificate, that certificate is issued for whatever job that they're hired for working under a superintendent. Somebody comes from Florida and signs a contract that says they have to have certain qualifications. If no objection is raised and no anomaly is pointed out, why can't they assume that the qualifications that they accumulated in Florida have equivalency in New York? I mean, you come with a Florida driver's license, you can drive in New York. Absolutely, Your Honor. I believe that's the full faith and credit clause of the Constitution would be recognizing in other states. Full faith and credit if you were to say that a person has the sufficient talent and education to perform a particular task and base that upon qualifications that that person has in another state. I take it that's your- That's part of our argument, Your Honor. In fact, there's another argument that we included in the complaint, which is a specific section of the law, essentially, in New York State Education. Is it your argument that she assumed that she had these qualifications? Yes. She did assume she had the qualifications. In fact, when she was hired, Dr. Brown, the then superintendent of education, as well as the whole selection committee, she appeared in front of a multi-person selection committee. And she was interviewed extensively by these individuals on two separate occasions before she was actually offered the contract. So there was always a full and ample opportunity for everyone to explore what her credentials were, what her degrees were in, what her experience was, and she passed all the tests that were required. Your pleading is that the first week on the job, what she's told about certification is to get a reciprocity certification, right? Isn't that what you- Yes. So the first thing she's told is not to get the two certifications referred to in the job posting, but to get a reciprocity certification that her Florida- Correct. Credentials satisfy New York. That is correct. All right. She doesn't get that. She gets the conditional school building leader certificate, right? Correct. And we don't have anything in the record as to whether New York requires more of someone in her position. I believe once she obtained the internship certificate for the school district leadership position, at least that's our position, she obtained the highest level of certification available, because the opinion we have is an internship certificate is the equivalent of the underlying full-fledged certificate. I mean, the whole idea is if someone is that well qualified, they should be given the opportunity to finish their learning essentially on the job and then fulfill whatever courses if they have to take some courses online or attend a seminar or to fulfill whatever is to be completed. The education department gives that flexibility to candidates. Thank you both. Thank you, Your Honor.